His Honor, CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
The plaintiff in this case claims a commission -as broker for the sale of real estate.
He alleged that the defendant, Peter Jung, was the owner of several lots of ground in the vicinity of Carrollton Avenue; that Jung employed L. Emile Freret verbally as his sales manager to sell said lots, giving him authority to engage sub-agents to.effect said sales; that Freret made a verbal contract with petitioner, by which Freret was to give him five per cent on any sales of property effected by him; that petitioner procured F. Gr. ’Cotton as a purchaser, and on March 13th, 20th and 28th, 1913, took the said Cotton to visit a property of said Jung *281 at the corner of Carrollton Avenue and Belfast Streets; that on April 25th, Cotton purchased the same from Jung for $9,000; that petitioner is therefore entitled to a commission of $450 which Jung refuses to pay him, hence this suit.
The' defendant, Jung, denied that he had made a contract with Freret to sell all his property in the vicinity of Carrollton Ave., or that he had given Freret power to employ a sub-agent or plaintiff to do so, or that Freret had employed plaintiff to make said sales on a commission of five per cent, and that if he did so it was without his knowledge or consent; he denied that plaintiff procured Cotton as a buyer with his knowledge or consent, or that Cotton purchased by reason of his efforts, or that plaintiff was the first person to approach Cotton; he especially denied that he ever had any dealings with plaintiff prior to or at the time of the sale, directly or indirectly, in connection with the property sold to Cotton. The defendant swore to his answer.
There was judgment for plaintiff and defendant has appealed.
The burden of proof was upon plaintiff to establish that Freret had been employed by the defendant to sell his property with power to engage another broker, or that defendant knew that Freret was trying to sell the property for his account and that he had contracted with plaintiff so to do on a commission of five per cent, with 'defendant’s knowledge and consent, and that plaintiff secured the buyer.
The only witnesses examined were the plaintiff, Freret and Cotton and the defendant himself.
• Freret swears positively that Jung gave him this property for sale; it is immaterial whether it formed a part of *282 the Fontainebleau Drive or not, as long as Freret bad it for sale; be also says that in tbe presence of plaintiff be informed Jung that plaintiff was tbe agent who procured 'Cotton as a purchaser, and that Jung said that if be bandied the sale be would be protected.
Tbe plaintiff tells bow be offered the property to Cotton; that be spoke to Freret about him, and made arrangements with him about bis commission; that in company with Freret, in the latter’s automobile, they took Cotton to visit tbe lots; that be afterwards took Cotton alone a second time to inspect tbe lots, and dissuaded him from buying cheaper lots opposite, or from building on City Park Avenue where be owned other lots; lie corroborates tbe conversation in which Freret told Jung that lie bad procured Cotton as a buyer and that be would be protected.
Cotton testified that Freret first directed bis attention to these lots, and that-Freret and Barker took him up to see them; that at that time be owned vacant lots on City Park Avenue on which he was about to build; that be could not agree about tbe price with them and be considered the trade off; that afterwards Jung came to see him, and be made tbe contract with him.
Defendant admits that he had engaged Freret to sell tbe Fontainebleau Drive property, but that Hahn bad tbe square in which these lots are situated; Hahn was Freret’s partner; be never employed Freret to sell .that square; be admits Freret introducing him to plaintiff and mentioning that plaintiff was going to sell a piece of property for them, but nothing else; Freret told him they had Cotton on tbe string; he never authorized Hahn to employ sub-agents; Freret was tbe first to speak to him about Cotton.
*283 We are satisfied that Freret was employed by defendant to sell these lots; bnt if we are mistaken in this./ there is no. donbt that Jnng knew that Freret was active in the pursuit of 'Cotton as a purchaser and that Jung encouraged him in it; he knew also that Freret was a broker, and made his living as such, and that if he obtained a purchaser he would have to pay him a commission. He admits himself that Hahn was Freret’s partner, that they occupied the same office, and the evidence is that the dealt with either of them indifferently.
There is no doubt that Freret, or Barker acting for Freret, earned their commission for the sale of these lots. The first letter on the subject is addressed by Barker to Freret and is dated March 12th. It is true that at the expiration of several days the brokers failed to secure . Cotton as a buyer. But when they failed Jung took up the cue and consummated the sale with the purchaser whom they had procured. This was on April 10th, or within less than a month from the time the brokers had indicated the purchaser. Gottschalk vs. Jennings, 1 A., 5; Jenkins vs. Trott, 3 A., 671; Hornbeck vs. Gilmer, 110 La., 500. In Lewis vs. Manson, 132 La., 817, quoted by defendant the Court found that (821) “plaintiff was clearly not the procuring cause of the sale of defendant’s property.”
As Freret disclaims any right to any commission, Barker is entitled to it.
But it is contended by Jung that Freret renounced his right to any commission, and that therefore the plaintiff is not entitled to any. No one is presumed to give. The- burden of proof was upon defendant and he has not met it. C. C., 2232 (2229). A fair interpretation of Freret’s testimony is that he agreed to waive any com *284 mission for himself in order to protect Barker in his right to a commission.
Opinion and decree, March 27th, 1916.
Rehearing refused, April 10th, 1916.
But what,is the amount of that commission?
Upon that subject Freret says: “My compensation was to be the usual commission of three per cent for selling the property, but Mr. Jung authorized me in this particular case, when T spoke to him about it, he authorized me to give Mr. Barker a commission of five' per cent on the property. ’ ’ There is no other evidence on the subject. As this obligation could arise only from a clear contract the burden was on plaintiff to pi ove it, -in the face of defendant’s denial. C. C., 2232 (2229). “He who claims the execution of an obligation must prove it. On the other hand, he who contends that he is exonerated must prove -the payment or the fact which has produced the extinction of the obligation.”
Plaintiff is therefore entitled only to the “usual commission” of three per cent upon the amount of the sale $8,900 or $267.00.
It is therefore ordered that the judgment of the lower Court in favor of plaintiff be reduced from four hundred and forty-five dollars to two hundred .and sixty-seven dollars with five per cent per annum interest from Apri L 6th, 1914, till paid with all costs of the lower Court, costs of appeal to be paid by plaintiff; and as thus amended that it be affirmed.’